ST. LOUIS, I. M. & S. RY. CO. VS KEYS.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 138.)

1. *Carriers—Burden of Proof.*

> In a suit for damages for the injury of live stock the burden is upon the plaintiff to prove the allegation that the carrier to whom the stock was delivered operated with another carrier from the place of shipment to the destination of shipment.

2. *Same—Evidence—Jury, Province of.*

> In a suit for damages for the injury to live stock, the question as to whether the defendant cooperated with another railway from the point of shipment to destination is for the jury.

3. *Same—Presumption.*

In a suit for damages for the injury of live stock the plaintiff testified as to an agreement with the agent of defendant for a through shipment, which agreement was not denied. *Held;* Sufficient to raise the presumption that the carrier had control of the connecting line to the point of destination.

4. *Same—Evidence, Province of.*

In a suit for damages for the injury of live stock, the question as to the cause of such injuries is for the jury.

Appeal from the United States Court for the Northern District of the Indian Territory; before Justice Joseph A. Gill, March 1, 1904.

Action by L. A. Keys against the St. Louis, Iron Mountain & Southern Railway Company. From a judgment for plaintiff. defendant appeals. Affirmed.

*Oscar L. Miles,* for appellant.

*W. D. Humphrey,* for appellee.

LAWRENCE, J. Appellee brought action against appellant to recover damages for loss of 29 hogs and injury to 77 others from alleged negligence in their shipment from Nowata, I. T., to Kansas City, Mo., on the 16th and 17th of May, 1902. It is alleged in the complaint that on said dates appellant, in co-operation with the Missouri Pacific Railway Company, operated a line of railway from said place of shipment, Nowata, I. T., to Kansas City, Mo., and on said 16th of May appellant, by its station agent at said place, orally undertook and agreed with appellee to carry said live stock from said Nowata to said Kansas City, and deliver same in good condition to appellee's consignee, for the usual and customary rate of freight. On said last-named date, pursuant to the express direction of

said agent, appellee delivered 106 head of hogs at appellant's stock pens at Nowata at the hour of 2:20 p. m., in good condition, for loading on the car for shipment. By reason of the insufficiency of the inclosure, the animals were driven into the chute, a narrow way leading from the pens to the shipping car. The day was very warm, and the hogs were crowded into this space, awaiting the arrival of the train, which was 1½ hours late, and before it came the hogs became overheated. They were loaded, and started at 4 p. m., when the appellee notified the conductor of the overheated condition of the hogs, and requested that they be given water at the next water tank, three miles north of there, where the engine would stop for water. It is averred that the conductor failed to water said hogs at said water tank, and by reason of such negligence 29 of said hogs died, and the remainder were injured in their market value, whereby the entire damage was $280. The answer denied that the Missouri Pacific Railway Company co-operated with appellant in the management of a line of railway from Nowata to Kansas City; denied the contract of shipment, the delivery to it of the hogs in good condition, and denied their loss was because of its negligence; denies appellee gave notice to its conductor of the heated condition of the hogs. The cause was tried by a jury, which returned a verdict for $270.70. Appellant moved to vacate the verdict and for new trial, and assigned 23 grounds therefor, which may be covered under the heads of error in refusing to exclude improper evidence, in refusing to instruct the—jury as requested by appellant, in instructing the jury, and want of evidence to support the verdict, and that it was contrary to the law. The motion for new trial was overruled, and judgment was rendered on the verdict.

The evidence showed without dispute that the hogs were in a heated condition when loaded on the car, and likewise

that they were in good condition when brought to the stock
pens for loading at the time requested by the station agent;
that the train did not arrive for an hour after the hogs came
to the pens, and during this time the hogs were exposed to the
sun upon a very warm day, crowded into a small space, used
as a chute to run animals into cars for shipment, because of
the insufficiency of the fence about the stock pens to hold
them. It did appear, however, from the testimony, that
appellee had a lot near by in which there was water which
could have been furnished the hogs during the interim of an
hour between the time the station agent notified appellee
that the delayed train would arrive and the time it did arrive;
but there was no testimony that appellee had knowledge that
he could have this length of time for the removal of the hogs
to a place for water. It further appears from the testimony
that after the train left Nowata at 4 o'clock it stopped at a
water tank three miles therefrom, and took water for the engine,
but the hogs were not given water, and there is no evidence
that they were given water until their destination was reached
at 8 o'clock the next morning. At Coffeyville, 23 miles from
Nowata, the train having the car of hogs was turned over to
the Missouri Pacific Railway Company, and by it delivered
to consignees at Kansas City, Mo., May 17th at 8 a. m., at
which time 29 hogs were found dead, and sold for $270 less
than they would have sold if in good condition, and the re-
mainder were not in a fit condition for market, and were kept
two days, and then sold under the market price because of
their bad condition. Witnesses on both sides testified that
the hogs appeared weak and in a famished condition for want
of water, and the car was dry, and gave no indication of water
having been given the hogs. The Nowata station agent testified
that the two railroads were being operated under one manage-
ment at time of shipment, and that the billheads used so in-
dicated. A claim for damages was filed with the general live

stock agent of the Missouri Pacific Railway Company at Kansas City (N. Douthitt), who replied to it in a letter to the appellee, which was read in evidence over objection of appellant. which was headed: "The Missouri Pacific Railway Company, St. Louis, Iron Mountain & Southern Railway Co., and Leased, Operated, and Independent Lines. N. Douthitt, General Live Stock Agent. Kansas City, Mo., July 10, 1902. Mr. L. A. Keys, Nowata, I. T.—Dear Sir: Under date of May 26, Tamblyn & Tamblyn filed claim against our company your account for $281.83, value of hogs dead in car shipped from Nowata May 16th. Our investigation shows that between Coffeyville, Kan., and Kansas City these hogs were watered several times; that the train left Nowata about 3 p. m., and was delivered to stock yard Co. at Kansas City at 8 the following a. m.. which is first class service; and, as there was no rough handling of the stock en route, we assume that the hogs died from being crowded in the car, or from cholera, as there was 106 head in the load. There is no liability on part of our company for loss sustained, and claim is respectfully declined. Very respectfully, N. N. Douthitt."

A number of instructions were given the jury, to which appellant made a general exception, but did not suggest or ask any modification, or point out the particular part to which exception was made.

Appellant's fourth instruction was "slightly modified," as alleged in the record, and is as follows: "You are instructed that defendant's conductor, Rodecker, had a right to assume that plaintiff's hogs had been properly cared for by plaintiff, sufficiently watered, and were in good condition when loaded, unless he received knowledge to the contrary," and was excepted to by both parties.

Appellant's fifth instruction was given as follows: "The court tells you that, the plaintiff having assumed the loading of the hogs, then if you find they were improperly loaded, and that such improper loading contributed to cause the death of some and loss to others, then your verdict must be for defendant." To the giving of this appellee excepted.

Instruction marked "A" was given as follows: "You are instructed that, in the absence of an express contract to carry and safely deliver this consignment of hogs beyond the terminus of its line at Coffeyville, then it was not liable for any damage to said hogs beyond Coffeyville, and you should find for the defendant," and was excepted to by appellee.

Instruction marked "B" was given as follows: "If you find that plaintiff could have watered his hogs before loading, and reduced their heat and danger therefrom, and failed to do so, and thereby their heat and danger therefrom were increased, and the same contributed to the death of the hogs, then you will find for the defendant," and to this instruction appellee excepted.

Instruction marked 9 was given as follows: "If you find in favor of the plaintiff, the measure of his damage is the difference between the market value of the dead hogs at the time the load of hogs should have arrived in market by due course of shipment and their market value if they had arrived at Kansas City alive and in good condition." To the giving of this instruction defendant excepted.

The complaint charges that the line of road over which the shipment in question was made was managed and operated conjointly by appellant and the Missouri Pacific Railway

Company, and the alleged contract was made with appellant alone. The burden of proof was upon appellee to establish this. It is assumed by the appellant that this was not done, or that there was not evidence sufficient to authorize a verdict, and therefore the court erred in not giving its instruction at the close of appellee's evidence in chief, directing the jury to return a verdict for defendant. Was there evidence tending to prove the fact, sufficient to give reasonable probability of the existence of the fact? Appellant's agent and witness, Nelson, testified that the two companies were under one management, and there was testimony that the billheads used by appellant showed a co-operation in the management of the business of the roads on the line from Nowata to Kansas City. The letter of Douthitt to appellee is tantamount to an admission that entire freight trains were carried over both roads, and, in connection with the language of the letter, constituted evidence strongly tending to establish the fact of co-operation of the lines of road as one in matter of through shipment from the place of shipment to place of destination in this case. The testimony of appellee as to the agreement with the agent, Nelson, for through shipment of the hogs, and not denied in express terms by Nelson, is prima facie proof of his power to make such agreement. It raised the presumption that the appellant had control of the line for purposes of shipment from Nowata to Kansas City. Therefore the court did not err in refusing to instruct the jury, at the close of appellee's evidence in chief, to return a verdict for defendant; and for the further reason that there was not a total want of evidence to support a verdict at this stage of the case against appellant for negligence which proximately caused the death of the 29 head of hogs and injury to the remainder. It was a question for the jury to say, under the court's instructions, whether or not the appellant was negligent in failing to provide a suitable place to yard the hogs while they were being held during a very

warm day awaiting the delayed train, and by reason thereof they became overheated, and which was the beginning of the proximate cause of the injury to the hogs, and whether or not the failure of appellant to water the hogs at the first water tank, three miles north of Nowata, where the train was stopped to take water for the engine, was an additional proximate cause producing said injury.   If the court was right in refusing the said first instruction asked by appellant, then it must follow that, as the case then stood, the jury would have been authorized to return a verdict for appellee.   The question was not then material as to whether or not the two roads were merely connecting lines, or co-operating lines under one management.   There cannot be any dispute of the proposition that under the unlimited contract of shipment herein the appellant was liable, under such proof of negligence, for the injury resulting therefrom.

With this view of the case we deem it unnecessary to consider the question of liability or nonliability of connecting lines of common carriers in this jurisdiction.   We have carefully read and considered the evidence received, offered, and excluded by the court, and the instructions given, of which appellant complains, and think its objections and exceptions thereto are not well taken, and therefore the judgment below is affirmed.

CLAYTON and TOWNSEND, JJ., concur.